IN RE APPLICATION OF LEECH, INC., A NEBRASKA
CORPORATION.
LEECH, INC., A NEBRASKA CORPORATION, APPELLEE AND
CROSS-APPELLANT, V. BOARD OF EQUALIZATION OF CHASE
COUNTY, NEBRASKA, ET AL., APPELLANTS AND
CROSS-APPELLEES.
IN RE APPLICATION OF PEARL LEECH.
PEARL LEECH ET AL., APPELLEES AND CROSS-APPELLANTS, V.
BOARD OF EQUALIZATION OF CHASE COUNTY, NEBRASKA,
ET AL., APPELLANTS AND CROSS-APPELLEES.
127 N. W. 2d 917

Filed April 17, 1964.   Nos. 35628, 35629.

Daniel E. Owens, for appellants.

Herbert L. Jackman, for appellees.

Heard before WHITE, C. J., CARTER, MESSMORE, YEAGER, SPENCER, BOSLAUGH, and BROWER, JJ.

WHITE, C. J.

This litigation involves a controversy as to actual valuation for tax purposes, under section 77-112, R. R. S. 1943, of two tracts of land in the city of Imperial, Nebraska. The cases involve technically four separate appeals from orders of the county board of equalization, the valuation of each tract being appealed for the years of 1962 and 1963. The cases were consolidated for trial on appeal in the district court, they were consolidated for briefs and argument in this court, and all of the evidence appears in one bill of exceptions. This opinion, therefore, will be dispositive of all of the appeals and the valuations complained of. The record also shows that the parties are in agreement that the valuation for 1962 should be the same as for 1963, so we approach the problem simply as a valuation of the two tracts as shown by the record before us.

Tract A (Lots 7 to 12, Block 23, Railroad Addition to Imperial) is the Leech Chevrolet garage building on the southern portion of Main Street in Imperial, Nebraska. The building is on the east side of Main Street, has a 150 by 150 foot frontage on both Main Street and a side street, and has about 19,000 square feet of floor space.

Tract B (Lots 1 to 7, Block 22, Railroad Addition to Imperial) is the Leech garage parking lot with a carport

building on it which is a canopy-type structure mainly of sheet metal and approximately 25 by 175 feet in size. It is located across Main Street to the west from the Leech garage. These lots and the building are and have been continuously used in connection with the operation of the garage.

The county assessor and the board of equalization placed a value of $69,600 on the garage (Tract A), the district court reduced this valuation to $50,000, the defendants appeal, and the plaintiffs cross-appeal claiming that the valuation should be placed at $35,000. On Tract B, the county assessor and the board of equalization placed the valuation at $11,555, the district court reduced this valuation to $7,500, and the defendants appeal. The trial of this appeal, both in the district court and this court, is de novo as an equitable proceeding. Matzke v. Board of Equalization, 167 Neb. 875, 95 N. W. 2d 61; Adams v. Board of Equalization, 168 Neb. 286, 95 N. W. 2d 627.

The pleadings and the evidence in this case frame only one basic issue and that is the actual value of the plaintiffs' two tracts of land. It is not contended by the plaintiffs that their value has not been fairly or properly equalized with other property in the county. This must be pointed out in this case because the defendants insist in their brief on the application of the rules of presumption and admissibility of evidence applicable to an equalization type of case. A taxpayer has the right to test the actual value of his property or show that it has not been properly equalized. H/K Company v. Board of Equalization, 175 Neb. 268, 121 N. W. 2d 382; Adams v. Board of Equalization, *supra.*

A like appeal on actual valuation was before this court in Adams v. Board of Equalization, *supra,* and this court laid down the following rules directly applicable to the case now before us. It said: "It is presumed that a board of equalization has properly performed its official duties and in making an assessment it acted upon

sufficient legal evidence to justify its action. However, the presumption disappears when there is competent evidence on appeal to the contrary and thereafter the reasonableness of the valuation made by the board of equalization becomes one of fact to be determined upon the evidence, unaided by presumption, with the burden upon the party contesting to establish that an improper and unreasonable valuation has been placed on the property involved in the litigation. Ahern v. Board of Equalization, 160 Neb. 709, 71 N. W. 2d 307; K-K Appliance Co. v. Board of Equalization, 165 Neb. 547, 86 N. W. 2d 381; Omaha Paxton Hotel Co. v. Board of Equalization, 167 Neb. 231, 92 N. W. 2d 537; Matzke v. Board of Equalization, *supra.*"

Before we review the evidence, we set out the provisions of section 77-112, R. R. S. 1943, which furnish the applicable yardstick for measuring the evidence: "Actual value of property for taxation shall mean and include the value of property for taxation that is ascertained by using the following formula where applicable: (1) Earning capacity of the property; (2) relative location; (3) desirability and functional use; (4) reproduction cost less depreciation; (5) comparison with other properties of known or recognized value; and (6) market value in the ordinary course of trade."

A summary of the valuation is shown by the following:

| | Tract A Land | Tract A Total | Tract B Land | Tract B Building | Tract B Total |
|---|---|---|---|---|---|
| Garber-Plaintiffs' witness #1 | $4,585 | $35,000 | $5,250 | $2,000 | $ 7,250 |
| Burke-Plaintiffs' witness #2 | | 30,000 | | | 5,000 |
| Lessee, Powell-Plaintiffs' witness #3 | | 24,300 | | | 5,200 |
| Powell Contract Sale Price | | 24,300 | | | 5,200 |
| Adams-Plaintiffs' witness #4 | | 30,000 | | | 5,000 |

| | | | | | |
|---|---|---|---|---|---|
| Weir-Plaintiffs' witness #5 | | 32,500 | | 2,500 | 7,500 |
| Chase County-"Actual value" per appraisal cards | $4,585 | $69,600 | $7,395 | $4,160 | $11,555 |
| Contractor Burham-Defendants' witness #1 | $4,500 | $65,513.80 | $5,250 | $2,800 | $ 8,050 |
| County Assessor-Browning-Defendants' witness #2 | | 65,000 | | | 10,000 |
| Co. Board Chairman Terry-Defendants' witness #3 | Acceptance of valuation that was already on it. He did not set any value himself. | | | | |

We first discuss Tract A, the Leech garage property. The land value here of approximately $4,500 is not in substantial dispute. Factually, the real issue in the case centers around the value of the garage. It was built in three sections. The original building was built in about 1944 and had approximately a 100-foot frontage on Main Street and extended 150 feet to the east. A body shop was added to the rear of the building in 1948. An addition of approximately 50 by 90 feet was added in 1951 with a frontage on Main Street which completed a Main Street north and south frontage of 150 feet. This addition is known as the "Allison Addition," and was added on by Leech, the original owner who died in August 1960, for the contemplated expansion in the business because Allison, his son-in-law, planned to join the business but never did. The building is generally a horseshoe shape consisting of between 18,000 and 19,000 square feet. The building is cement block with some parts hollow tile, is not fireproof, is cement floored, is heated by seven overhead gas furnaces, and has a minimum of utilities. The evidence shows that the body shop is of inferior construction to the other two sections which are of "fair" construction.

Generally, the evidence shows that there is no avail-

able market in Imperial for a garage building of this type, that the garage is located at the south end of the business section, that the business section of the town is moving to the north, that the building is only adaptable for the one use for which it is now being used, that it was constructed for the special purposes that the long-time owner Leech desired, that it is much too large when compared to the reasonably necessary space usable for this purpose in a city the size of Imperial, that there has been a decline in population in Imperial in the last 10 years, and that there are unsalable vacant buildings in the vicinity.

The county assessor held office from 1947 to 1951 and from 1955 to the present date. The valuation of $69,600 (including the land) has not been changed since 1954. It was originally prepared and furnished the county by an appraisal firm. The figures on his official appraisal cards represent reproduction costs on a front footage basis on the buildings and only allow a 10 percent "physical" depreciation, arbitrarily allowed all buildings in Imperial and Wauneta. The only additions to this property were the reproduction costs added on this basis when the two additions referred to were built in 1948 and 1951. This witness' evidence shows that at no time, over a period of some 16 or 17 years, was depreciation figured or allowed on this building except what may be termed the original 10 percent "equalization" figure given to all buildings in both towns. The record shows that this appraisal card figure of $69,600 was automatically carried down as the "actual valuation" from 1954, that no reappraisal was made, and that there was no appraisal made to conform to the different requirements of section 77-112, R. R. S. 1943, set out above. The conclusion is inescapable from the record in this case that there was a mechanical acceptance of a valuation fixed by another, based on the sole factor of reproduction costs, and giving no consideration then or now to any of the other pertinent statutory factors. On

direct examination of this witness there was an attempt to take the $69,600 figure and have this witness relate it to the applicable sections of the statute based on what may be termed a brief visit to the premises in 1962 and 1963. But the evidence shows that no consideration was given to any of the other applicable factors other than reproduction costs as shown on the appraisal card. This witness did not know what square foot figure was used at any time in figuring the original reproduction costs, and despite the clear evidence available and brought home to him, gave no consideration to the earning capacity, relative location, or sale prices on the property as they related to the situation present in 1962 and 1963. All of the witnesses in this case testified, in effect, that there were no other comparable properties in Imperial by which to determine its valuation.

The above analysis is borne out by the arbitrary action of the county board of equalization in disposing of the protest and appeals, without hearing, in both 1962 and 1963. The printed form which constitutes the final determination by the county board of equalization simply recites, "No change until reappraisal." It leaves blank the other spaces in the report that are required to be filled in. In 1963, the same procedure was followed with this sole notation, "After inspection of the properties and comparison of valuations on all other complaints, no changes were made on the present valuations." These actions require no comment except to show that the board decided to follow the appraisal card valuation of the county assessor since 1954 with no hearing and no determination under the applicable factors required in section 77-112, R. R. S. 1943.

Where a county assessor has not acted on his own information, and where it is arbitrarily determined without explanation of the methods used or the elements considered, there is no presumption that the valuation is correct, and such a valuation is not supported by competent evidence and is legally erroneous. Baum Realty

Co. v. Board of Equalization, 169 Neb. 682, 100 N. W. 2d 730; Matzke v. Board of Equalization, *supra;* Adams v. Board of Equalization, *supra.*

We think applicable here is the following from a closely similar case, Adams v. Board of Equalization, *supra,* wherein it is stated as follows: "* * * applied to the replacement cost the depreciation listed in the manual which was 6 percent, a purely arbitrary percentage, and this resulted in a figure of $30,360 which was described as the physical value. The result was necessarily an arbitrary one. There is no evidence to justify the deduction or depreciation of 6 percent of the alleged replacement cost. That deduction supports an inference that the replacement cost was neither the actual nor fair market value. The last amount stated was the one turned over by the representative to the county assessor. * * * He testified that he gave no attention to market value; he just figured the replacement cost less 6 percent of the building on the lots. This was the computation the county assessor accepted as the value of the building. The value of the lots, concerning which there is no dispute, was added to $30,360, making a total of $31,524 which was the valuation placed on the real estate of appellant in this case. * * * The record is clear that appellee (the county board of equalization) merely accepted the valuation adopted by the assessor."

The defendants called a building contractor as a witness. The substance of his testimony is that he used a $92,420 reconstruction cost based on $5 per square foot, took 17 years of depreciation at 2 percent, and reached a valuation of $65,513.80 for the building. We will not analyze his evidence further except to say that his valuation took into account no other factor other than present reconstruction costs less depreciation.

The chairman of the board of equalization testified that he and the other members of the board and the assessor visited the property, that they didn't discuss sale price or earning capacity of the property, and that no

investigation was made with reference to the reproduction cost of the property. It appears they consulted the contractor witness referred to above after the determination of the appeals. Perhaps the best way to characterize the action of the county board is this testimony of the county equalization board chairman. Upon cross-examination, the plaintiffs' counsel asked Mr. Terry:

"By Mr. Jackman

"Q. Sir, what factors did you apply in trying to arrive at the actual value of the Leech properties?

"A. That valuation was already on it. * * *

"A. The value was set; it was already set on it. We never set no value."

Length forbids even a brief recital of the plaintiffs' witnesses separately. The testimony of the plaintiffs was produced by the lessee operator of the garage and included all of the licensed real estate dealers in Imperial. Their valuation ranged between $24,300 to a top of $35,000. Their valuation took into consideration all of the relevant factors recited in the statute, section 77-112, R. R. S. 1943, except the one of comparative properties in the community because there were none. They took into consideration reproduction costs, year by year depreciation, and also took into consideration that some of the building was constructed poorly and other portions only in a fair manner which, based on what appears from the record, is almost undisputed. We feel that the witness Garber's testimony in this respect is entitled to great weight—giving the property a present depreciated reproduction cost of $51,000. But. the evidence shows that the building is much too large for its reasonable available or productive use in Imperial as a garage, that it is not suitable for any other purpose, and that the size of the building exists because of the special motives of the longtime owner Leech who died in August 1960. The evidence also shows that there are vacant buildings in the vicinity, that there has been a decline in population in Imperial during the last 10

years, and that there is a movement of the business section of the town to the north and away from this large garage.

The evidence shows that the lessee, Powell, took over the garage and Chevrolet agency in May 1961 shortly after the death of Leech and that he entered into a lease with the nonresident owners for $300 per month for 5 years with options to renew. It shows an offer of $35,000 by another party for this property which fell through because the lessee, Powell, would not agree to a raise in his rent of $50 per month and to the free use of a large portion of the building by the prospective purchaser. It shows that Powell bought this garage property under contract for the sum of $24,300 and there is no evidence in the record to support the asserted suspicion that this is not a bona fide sale. The evidence tends to also show that the market value of business properties is lower in the south part of Imperial compared with market values 10 to 15 years ago. We are aware that market value is not the sole test but it is entitled to weight and must be given consideration along with many other matters relevant to the actual value as defined by statute. Novak v. Board of Equalization of Douglas County, 145 Neb. 664, 17 N. W. 2d 882.

But a fair consideration of the evidence as to market value, fair capitalization of the income on this property, its declining value in light of its location, its restricted and overbuilt condition for functional use, and a fair depreciation on reconstruction considering the original quality of construction of the three sections of the building could only lead us to one conclusion and that is that the plaintiffs have met the requisite burden of proof showing that this property was grossly overvalued for tax purposes. We feel that the value of the building should be fixed at $30,000. This, together with a valuation on the land of $4,500 to $5,000, leads us to the fixing of the valuation of Tract A, the garage property, at $35,000.

We turn now to Tract B, the carport. This tract consists of seven lots. From the chart previously set out in this opinion it seems that there is not much dispute that the value of the land is around $5,000. This is borne out in the record by previous purchases of adjacent property and offers of purchase for portions of these lots. We note that this land is not available for any other use but for parking unless the present rather temporary carport structure is removed. The canopy carport was constructed in 1953 at a cost of $4,860. The depreciation allowed by the various witnesses varied between $2,000 and $2,800. The district court fixed a valuation of $7,500 on Tract B, and we see no reason to disturb it. It is significant to note that the county's official actual valuation as taken from the appraisal card on this tract was $11,555, prepared in the same manner and carried through the years like on Tract A, the garage property. But, the assessor and Burham, the contractor witness for the defendants, placed a valuation of $10,000 and $8,050, respectively, on this property, neither one of them testifying as to the "actual value" but premising their valuation on replacement value only less depreciation.

In deciding this case, we are aware of our recent holding in H/K Company v. Board of Equalization, *supra,* in which the contention was made that the assessor's valuation did not comply with the statutory requirements because it was taken automatically from previously prepared appraisal cards. We held in that case that the county assessor did comply with the statute and did render an independent opinion as to valuation, "based on his own analysis." As we have pointed out, that is not the situation here. Here, the situation is comparable with the finding and the holding in Adams v. Board of Equalization, *supra.* The evidence here shows factually that the original appraisal card by an independent party was made on the basis of reproduction costs only with no actual allowance for continuing

depreciation and that this valuation was automatically accepted through the years by the taxing authorities without any consideration of the relevant and applicable statutory factors.

We therefore hold that in case No. 35629 involving the 1962 and 1963 valuations of Tract A, the garage property, that the actual valuation should be fixed at $35,000. We hold that in case No. 35628, involving Tract B, the carport property, that the valuation of the district court in the sum of $7,500 should be affirmed.

In light of our de novo finding on valuations of the properties involved, it is unnecessary to consider the issue presented on the cross-appeal.

The judgment of the district court is affirmed as modified.

AFFIRMED AS MODIFIED.