PATRICIA ARNESON, APPELLANT, v. CEDAR COUNTY,
NEBRASKA, APPELLEE.

321 N.W.2d 427

Filed July 2, 1982. No. 43976.

Kenneth M. Olds of Olds, Swarts and Ensz, for appellant.

Mark Behm, Cedar County Attorney, for appellee.

Heard before KRIVOSHA, C.J., and HASTINGS, J., and COADY and FAHRNBRUCH, D. JJ., and RONIN, D.J., Retired.

COADY, D.J.

This appeal involves a dispute over the valuation for tax purposes of 80 acres of farmland in Cedar County, Nebraska, owned by the appellant, Patricia Ewing Arneson. In 1978 the county board of equalization raised the assessed value of her land, hereinafter referred to as the north eighty, from $7,125 to $11,190, after having changed its classification from dryland to irrigated land.

The plaintiff appealed that decision to the District Court for Cedar County, where the original decision was affirmed. The plaintiff has appealed to this court. We affirm the District Court.

Appellant's north eighty lies directly north and adjoins the eighty owned by her mother, hereinafter referred to as the south eighty. Both tracts are farmed by the same tenant and are managed by appellant's father, David Ewing, doing business as Midwest Land Company, and hereinafter referred to as manager. There is an irrigation well on the south eighty and the tenant did apply some water on the north eighty in 1978 with the permission of all concerned. A water winch system is owned by the tenant.

Both tracts suffer a two-pole electric highline which appears to run across the middle of the tracts and which prevents the use of a center pivot irrigation system. The water winch system sprinkles 90 rows at a time but destroys at least three rows at each location. Pictures of the north eighty indicate that the ground is too rolling for economical flood or gated pipe irrigation. There was expert opinion evidence indicating that a water winch system is an inferior watering system.

The county board of equalization relied upon the guidelines for irrigated land in the state manual supplied to the county assessor, and did consider soil conditions and types on the farm. There is a whiff of evidence that production records are inherent in the guidelines. Aerial photos and ASCS records were considered.

The manager testified for the appellant that the 1978 market value of the north eighty was $22,040 (approximately $275 an acre). The appellee did not choose to produce any comparable sales at trial in the District Court or to introduce any opinions indicating actual value. The evidence, on the one hand, and the lack of evidence, on the other, does cause us to pause. But, after searching the whole record and the briefs, we must point out that the appellant is not arguing that her land has been valued in excess of its actual value, and there is no evidence reflecting

such excess upon which we could rely.

Almost all of the appellant's argument, as well as evidence, is negative, and she appears to rely mainly upon the dissent in *Otradovsky v. Board of Equalization,* 206 Neb. 559, 294 N.W.2d 334 (1980), and upon the decision in *Gradoville v. Board of Equalization,* 207 Neb. 615, 301 N.W.2d 62 (1981). See, also, *Hastings Building Co. v. Board of Equalization,* 190 Neb. 63, 206 N.W.2d 338 (1973). We will repeat some of the black letter law set forth in those cases.

An appeal from a county board of equalization is heard as in equity and is tried de novo in this court. The presumption that a board of equalization has faithfully performed its official duties disappears when there is competent evidence on appeal to the contrary, and from that point on the reasonableness of the valuation fixed by the board of equalization becomes one of fact based upon evidence, unaided by presumption, with the burden of showing such value to be unreasonable resting upon the appellant on appeal from the action of the board. See *Gradoville v. Board of Equalization, supra.*

Upon consideration of the evidence, we would agree that the negative evidence in this case does erase the above-mentioned presumption. With that concession, appellant interprets her citation of a number of cases as authority for this court to overrule the county board and District Court: *Weller v. Valley County,* 141 Neb. 69, 2 N.W.2d 606 (1942); *Swanson v. Board of Equalization,* 142 Neb. 506, 6 N.W.2d 777 (1942); *Leech, Inc. v. Board of Equalization,* 176 Neb. 841, 127 N.W.2d 917 (1964); *Richards v. Board of Equalization,* 178 Neb. 537, 134 N.W.2d 56 (1965); *Boss Hotels Co. v. County of Hall,* 183 Neb. 19, 157 N.W.2d 868 (1968); *Chudomelka v. Board of Equalization,* 187 Neb. 542, 192 N.W.2d 403 (1971); *Hastings Building Co. v. Board of Equalization, supra;* and *Gradoville v. Board of Equalization, supra.* After studying those cases, the reader will recognize

that in each and every case there was evidence in the record upon which the court, de novo, could determine the actual value of the specific property being taxed. We repeated in *Hastings Building Co. v. Board of Equalization, supra* at 71, 206 N.W.2d at 343, that " 'The burden of proof is upon a taxpayer to establish his contention that the value of his property has not been fairly and proportionately equalized with all other property, resulting in a discriminatory, unjust, and unfair assessment.' "

AFFIRMED.

FAHRNBRUCH, D.J., dissenting.

I respectfully dissent. This is a case of "omitted irrigation" being placed on the land by the county assessor and then assessed. The type of "irrigation" assessed does not add one cent to the value of the land.