H/K COMPANY, A NEBRASKA CORPORATION, APPELLANT, V. BOARD OF EQUALIZATION OF THE COUNTY OF LANCASTER, STATE OF NEBRASKA, ET AL., APPELLEES.

121 N. W. 2d 382

Filed April 26, 1963. No. 35390.

Mason, Knudsen, Dickeson & Berkheimer, for appellant.

Paul L. Douglas, William D. Blue, Ronald D. Lahners, Floyd A. Sterns, and Walter D. Weaver, for appellees.

Heard before WHITE, C. J., CARTER, MESSMORE, YEAGER, SPENCER, BOSLAUGH, and BROWER, JJ.

SPENCER, J.

This is an appeal from a judgment of the district court involving issues of tax valuation and equalization for the

tax year 1959 on improved commercial property in Lincoln, Lancaster County, Nebraska.

The appellant, H/K Company, a Nebraska corporation, which will hereinafter be referred to as plaintiff, is the owner of two separate but contiguous properties, referred to as tracts I and II. Tract I is described as Lot 1, and the east 10 feet of Lot 2, Original City, Block 39, Lincoln, Lancaster County, Nebraska. Tract II covers the west 40 feet of Lot 2 and all of Lot 3, Original City, Block 39, Lincoln, Lancaster County, Nebraska.

The county assessor of Lancaster County determined the actual values of the land and improvements for tax purposes for the year 1959 to be as follows:

|  | Tract I | Tract II | Total |
|---|---|---|---|
| Land | $106,270 | $ 74,875 | $181,145 |
| Improvements | 62,710 | 117,885 | 180,595 |
| TOTALS | $168,980 | $192,760 | $361,740 |

The county assessor determined the assessments on these values to be as follows:

|  | Tract I | Tract II | Total |
|---|---|---|---|
| Land | $ 33,475 | $ 23,585 | $ 57,060 |
| Improvements | 19,750 | 37,130 | 56,880 |
| TOTALS | $ 53,225 | $ 60,715 | $113,940 |

Lot 1 is the corner lot at the southwest corner of Fourteenth and P Streets in the city of Lincoln, Nebraska, with a frontage on Fourteenth Street of 142 feet and a frontage on P Street of 50 feet. The improvements during 1959 consisted of an old three-story brick building with wood joists. The building was in poor condition but was being rented. The second and third floors of the building were maintained as a rooming house. The first floor of the building was leased to small stores and shops. The east 10 feet of Lot 2 consisted of a stairway and entrance to another building which was situated on the balance of Lot 2 and on Lot 3 which adjoin Lot 1 on the west. The improvements

on Lots 2 and 3 are a two-story building which during 1959 was occupied by a cafeteria, a sport shop, and the offices of the American Bus Lines which were on the second floor. The stairway on the east 10 feet of Lot 2 led to the offices of the American Bus Lines.

The district court found that the valuation of the building improvements on tract I, as determined by the county assessor, was unreasonable, excessive, and arbitrary, and reduced the actual value of the improvements to $25,835, which, allowing for adjustment for the stairway, is the actual value of the improvements as determined by the plaintiff's expert. The district court further determined that the actual value of the land in tract I, as determined by the assessor, was arbitrary and unreasonable because evidence did not disclose that the same percentage of reduction had been applied to tract I as to tract II, and reduced the actual value of the land to $89,498, which is a little over $20,000 above the figure given by plaintiff's expert. It then found that the assessed value should be determined by taking 31.5 percent of the actual value of the said property, so that the assessed value of the land in tract I was reduced to $28,191.87, and the assessed value of the improvements to $8,138.03, making a total assessed value of tract I of $36,329.90.

No change was made by the district court in the actual or assessed values of tract II, so that the total assessed value of both tracts I and II was determined by the district court to be $97,044.90.

Plaintiff perfected an appeal to this court, alleging five assignments of error, which may be grouped as follows: The court erred (1) in failing to equalize the assessments with other property in Lancaster County; (2) in determining the assessed values of tracts I and II exceeded $65,972; and (3) in refusing to admit certain evidence of ratio studies.

The evidence discloses that this property was purchased by the plaintiff in June 1959, for a total consid-

eration of $275,000. For the purpose of securing a loan on the property, the plaintiff was required to obtain two independent appraisals of the loan value of the property. One of these appraisers testified for the plaintiff. It was his opinion that the fair market value of the property when he appraised it in 1959 was $280,590, which, broken down for comparison with tracts I and II, would be approximately as follows:

|  | Tract I | Tract II | Total |
|---|---|---|---|
| Land | $ 69,000 | $ 81,000 | $150,000 |
| Improvements | 20,590 | 110,000 | 130,590 |
| TOTALS | $ 89,590 | $191,000 | $280,590 |

E. T. Wilkins & Associates completed a mass appraisal of all urban and rural property in Lancaster County in the spring of 1954. This appraisal was undertaken to equalize the assessed valuation on real estate and improvements in Lancaster County. All the findings by the Wilkins company were turned over to the county assessor of Lancaster County. There is extensive testimony as to the methods employed by the Wilkins company to determine the values fixed by it. Because the actual value figures used by the assessor are the same as the Wilkins company figures, the plaintiff complains that the assessor made no independent appraisal, but merely accepted the Wilkins' figures. However, the testimony of the county assessor is that the actual figures on his books are based on his own opinion of the valuations. When the Wilkins appraisers were present on a portion of this property in 1954, he was there with them. When the data was put on the Wilkins' card, he checked each item on the card. He did not personally inspect the property in 1959, but did send his chief deputy to do so, and the deputy reported back to him that there had been no changes in the property.

An appeal to the district court from the action of the county board of equalization is heard in equity, and upon appeal to this court is tried de novo. See LeDioyt v.

County of Keith, 161 Neb. 615, 74 N. W. 2d 455. The burden of proof is upon the plaintiff to establish its contention that its property has been unreasonably valued in an amount greater than its actual value, or that its value has not been fairly and properly equalized with all other property resulting in a discriminatory and unfair assessment. See Newman v. County of Dawson, 167 Neb. 666, 94 N. W. 2d 47.

Generally, the valuation of property made by an assessor for taxation purposes is presumed to be correct if it reflects his own information and judgment. However, if he does not inspect the property and accepts the valuation fixed by another person, this presumption does not exist. See Baum Realty Co. v. Board of Equalization, 169 Neb. 682, 100 N. W. 2d 730.

It is the plaintiff's position that the valuations fixed for tracts I and II are those of the Wilkins company and not those of the assessor. The assessor did inspect the property personally, checked the individual items appearing on the Wilkins' cards which went into the valuation, agreed with the figures, and adopted them as his own. While the assessor did not inspect the property in 1959, he did send his chief deputy to do so. We do not accept the plaintiff's premise that the county assessor gave no opinion based on his own analysis. We find the evidence to indicate otherwise.

To prove the property to be valued in an amount greater than its actual value, plaintiff proved its sale price in 1959, and produced witnesses who fixed its actual value between $275,000 and $280,590. The district court found the valuation placed by the assessor on tract I excessive on both the land and the improvements, and reduced the valuation. Plaintiff complains that the reduced valuation on tract I is still excessive.

Section 77-201, R. R. S. 1943, provides as follows: "All tangible property and real property in this state, not expressly exempt therefrom, shall be subject to taxation, and shall be valued at its actual value which shall

be entered opposite each item and shall be assessed at thirty-five per cent of such actual value. Such assessed value shall be taken and considered as the taxable value of which the levy shall be made."

"Actual value" is defined by section 77-112, R. R. S. 1943, as follows: "Actual value of property for taxation shall mean and include the value of property for taxation that is ascertained by using the following formula where applicable: (1) Earning capacity of the property; (2) relative location; (3) desirability and functional use; (4) reproduction cost less depreciation; (5) comparison with other properties of known or recognized value; and (6) market value in the ordinary course of trade."

The county assessor testified that each of the factors enumerated above were considered in connection with his personal assessments of the property in arriving at his opinion of the actual value of tracts I and II. Plaintiff challenges this statement because the assessor has not changed the assessment since 1954 and the first five of these particular factors did not become a part of the statute until 1955. The testimony, however, is undisputed except by this inference. We cannot say from this record that the assessor did not review his assessment in the light of these factors and decide to make no change.

As to tract II, the assessor's actual valuation after making adjustment for the east 10 feet is only $1,760 above the market value fixed by plaintiff's expert. This difference is so minimal that it is evident that the actual valuation fixed by the assessor could not be considered unreasonable. We are concerned, therefore, with the reasonableness of the actual value of tract I and the question as to whether the assessed valuation on both tracts has been fairly and proportionately equalized with all other property.

With reference to the location and functional use of tract I, there was a difference in the appraisal approach between the assessor and the plaintiff's witnesses.

The assessor fixed his value based on the 142-foot frontage on Fourteenth Street. Plaintiff's witnesses considered the value based on the 50-foot frontage of Lot 1 on P Street. During 1959, the use of the property was on Fourteenth Street. All of the shops faced on that street, and the main entrance to the apartments on the second and third floors was on Fourteenth Street. While plaintiff's expert did not feel this should make any difference in the valuation, we believe there is room for argument on this point so far as the highest and best use of the property is concerned. We approve the formula adopted by the assessor in determining the actual value of tract I by relating it to front footage on Fourteenth Street.

There is no evidence in the record on the actual value in 1959 of comparable properties, or of the other properties in the vicinity. Plaintiff's expert did, however, use six sales between 1950 and 1956 of properties in the general area for comparison purposes. The assessment date was March 1, 1959. § 77-1301, R. R. S. 1943. The property was not purchased by plaintiff until June 1959. Actual value is a matter of opinion based upon the use of the statutory formula. While the sale price three and one-half months later is entitled to considerable weight, it is not the sole controlling factor. We have carefully reviewed the adjustments made by the trial court on actual value, and have come to the conclusion that it cannot be said that the values fixed by the trial court are so unreasonable as to require further adjustment.

We determine that plaintiff has failed to sustain the burden of proving its property has been unreasonably valued in an amount greater than its actual value. We are now concerned with the contention that the assessed value is greater than that of other property in the county.

Section 77-201, R. R. S. 1943, requires that all property shall be assessed at 35 percent of its actual value. In Lancaster County, commercial property is assessed at

31.5 percent of its actual value as determined by the assessor. This has been the practice since 1954 when the State Board of Equalization reduced assessments reported by Lancaster County 10 percent. Instead of reducing the actual value figures, the assessor reduced the assessed value figures the 10 percent. The result is the same, but the rate in Lancaster County is 31.5 percent rather than 35 percent. While it makes no difference in this case, we disapprove of the method followed and state that the statutory method of determining assessed value must be strictly followed. The actual value of all property for tax purposes must be determined and the property assessed at 35 percent of that value as required by law. It is plaintiff's contention that other property in Lancaster County in 1959 was assessed at 23.99 percent of actual value as determined by a ratio study to which reference will be made later.

The assessor, on cross-examination, described the method used by him in 1954 to equalize the assessed valuation of all property in Lancaster County. The State Board of Equalization equalized the real estate of all counties in 1953. The assessor took the equalization figure for Lancaster County for 1953, and because he had used different figures for commercial, rural, and residential properties, he applied a percentage valuation of 70 percent, 65 percent, and 60 percent respectively of the 1953 valuation in an endeavor to equalize the basic or actual value. At that time, assessed value was 50 percent of basic value. This figure was not changed to 35 percent until 1957. To arrive at the assessed or taxable valuation, the assessor then took 50 percent of the figures he had obtained, and arrived at a percentage figure of the 1953 valuation of 35 percent for commercial properties, 32.5 percent for rural properties, and 30 percent for residential properties, rather than 50 percent for all real estate as required at that time by section 77-201, R. R. S. 1943. These figures were further reduced 10 percent by the State Board of Equalization.

There have been statutory changes since that time, both in the definition of actual value and in the assessment percentage. There is no evidence in this record as to the method used subsequent to 1954. The Constitution of Nebraska requires taxes on all tangible property to be levied by valuation, uniformly and proportionately. Art. VIII, § 1, Constitution of Nebraska. There is no authority for setting up classes for the assessment of real estate. In the absence of proof to the contrary, we must presume that the assessor in 1959 followed the law and that all property has been assessed uniformly.

To prove that its property was not assessed proportionately, uniformly, and equally with other property in Lancaster County, plaintiff relies mainly on a ratio study made by an employee of the Nebraska State Tax Commissioner, included as a part of an official state report and used by the State Board of Equalization. The ratio study is based upon the percentage relationship of assessed value to the sales price of property in the county. Ratio studies are prepared from the material supplied under section 77-1320, R. R. S. 1943, which provides as follows: "The register of deeds and the county clerk, if he or she is the ex officio register of deeds, of each county shall, on or before March 1 of each year, transmit to the State Tax Commissioner a report made upon blank forms to be prepared and furnished by the State Tax Commissioner showing all sales or transfers, except judicial sales, of farm lands and town property of and filed for record in the county of such officer during the previous calendar year."

It is to be noted that the report is to cover *all sales or transfers except judicial sales.* The register of deeds of Lancaster County testified that with the approval of the State Tax Commissioner he instructed the employees who prepared the report to select only 5 percent of all sales in the county on a random basis, and to report these. When this 5 percent was processed by the State Tax Commissioner's office, all transactions where the re-

lationship of the assessed value to the sale was less than 10 percent or more than 89 percent were discarded. The balance was then used to determine the ratio of the assessed valuation to the sales price. The percentage of this sampling for 1959 was 23.99 percent, which was obtained by dividing the total assessed value of the sales used by the total sales price. Actually, exhibit No. 15 indicates that 558 sales were reported to the State Tax Commissioner from Lancaster County for 1959. Only 466 were considered for the ratio study, so 92, or almost one-fifth, were eliminated. If many of those eliminated were in the bracket above 89 percent, it is evident that the average percentage figure for those reported would be too low. In any event, without a detailed discussion of some of the elements which might give a probative value to a ratio study, we find that the random sampling of so small a portion of the 1959 sales in Lancaster County is not sufficient to meet the burden of proof required for the plaintiff to prove that its property was not assessed proportionately, uniformly, and equally with other property in the county.

Plaintiff also claims that the trial court erred in refusing to admit ratio studies for the years 1958 and 1960. Without passing on the admissibility of the evidence, in view of what we have said relative to the 1959 study, plaintiff could not have been prejudiced by the exclusion of this evidence.

We find on trial de novo that the plaintiff has failed to meet the burden imposed by our law to prove the assignments discussed and that the judgment of the district court should be affirmed.

AFFIRMED.