IN RE APPEAL OF LEXINGTON BUILDING CO., INC.
LEXINGTON BUILDING CO., INC., APPELLANT, V. BOARD OF EQUALIZATION IN AND FOR THE COUNTY OF DAWSON, NEBRASKA, APPELLEE.

187 N. W. 2d 94

Filed May 14, 1971. No. 37653.

Cook & Cook, for appellant.

Willard Weinhold and Berreckman & Nelsen, for appellee.

Heard before WHITE, C. J., CARTER, SPENCER, BOSLAUGH, SMITH, McCOWN, and NEWTON, JJ.

WHITE, C. J.

The only question involved in this case is the valuation for tax purposes of the reconstructed portion of the old Centennial Building in downtown Lexington. The district court valued the reconstructed portion of the new Centennial Building and its land at $116,449. On appeal by the owner we affirm the judgment of the district court.

In an appeal to the county board of equalization or to the district court, and from the district court to this court, the burden of persuasion imposed on the complaining taxpayer is not met by showing a mere difference of opinion unless it is established by clear and convincing evidence that the valuation placed upon his property when compared with valuations placed on other similar property is grossly excessive and is the result of a systematic exercise of intentional will or failure of plain duty, and not mere errors of judgment. Newman v. County of Dawson, 167 Neb. 666, 94 N. W. 2d 47; LeDioyt v. County of Keith, 161 Neb. 615, 74 N. W. 2d 455.

Our statute, section 77-112, R. S. Supp., 1969, prescribes the following formula, where applicable, for determining the actual value of property for assessment purposes. The criteria are: (1) Earning capacity of the property; (2) relative location; (3) desirability and functional use; (4) reproduction cost less depreciation; (5) comparison with other properties of known or recognized value; and (6) market value in the ordinary course of trade.

The property involved is centrally located in downtown Lexington. The property consists of one new commercial building and a reconstruction of a portion of what was known as the old Centennial Building, now known as the McDonald Building. The evidence shows that the county assessor accepted the appraisal of this new portion of the building that was made by the Justin H. Haynes Appraisal Company, professional appraisers hired by the county board of commissioners to complete the reappraisal of all lands in Dawson County, required by section 77-1301.06, R. R. S. 1943. Such appraisal was mandatory. The precise issue presented here is the valuation for the year 1968. The new portion of the Centennial Building was constructed and finished in the fall of 1967. The evidence shows that with relation to the earning capacity of the *entire* property the gross rental income for 1968 was $9,036.96. The 1968 expenses that were properly deductible, excluding depreciation, of $4,302.64, leave a net income of $4,734.32. In the year 1969 a minimum gross rental income under the contract for the use of the property to the McDonald Company and Platte Valley Products, Inc., was $11,100, less expenses of $4,303.54, excluding depreciation, resulting in a net income of $6,796.46, or a net return of 0.0498 percent based on the trial court's total valuation. Particularly significant in this case is the fact that the appellant, under no compulsion to do so, elected to contract for the construction of this new building for the sum of $142,000 knowing at the time under the rental

contract the exact earning power the building would have. The appellant now complains when the county assessor fixes the actual value of the building at $101,449.

The rental contract referred to and entered into prior to the construction of the building was with the J. M. McDonald Company with a guaranteed annual rental of $9,000 plus 2½ percent of the annual gross sales in excess of $360,000. The president of the appellant, Mr. Stuckey, testified that the value of the building and the land that it sat on was in the sum of $85,000. The expert witness appellant called first testified that the market value of the property was $90,000 or $5,000 more than the president of appellant testified, and then he testified that the fair market value of the land under the new building was $17,300, the fair market value of the old portion of the Centennial Building was $20,000 and the fair market value of the newly constructed Centennial Building was $75,000 making a total appraised value of $112,300.

The evidence shows that this is a commercial property and is situated at a prime location in the middle of downtown Lexington. It is located at the northwest corner of the intersection of Sixth and Washington Streets, which is the principal intersection in the City of Lexington, Nebraska.

In the third factor of desirability and functional use the evidence shows that the property is located in an excellent location and that the lease contract binds the McDonald Company for 10 years from the possession date. The McDonald Company also has the option to renew the lease for 3 additional 5-year periods. The president of appellant himself testified to the above-average quality of the construction of the new Centennial Building. The evidence shows that this new portion of the building has better lighting, better arrangement, better grade of interior finish, better grade of heating and air conditioning, and better quality generally

than the surrounding buildings or commercial buildings in the City of Lexington.

It is undisputed that the total cost of the new Centennial Building project was $142,316.91. This does not include the cost of the land and the already existing office building, that was valued originally at $44,631 by the county assessor and reduced by the trial court to $35,000.

The valuation of the remainder of the existing building and the other portions of the property in the appraisal are not at issue in this appeal as the appellee has filed no cross-appeal.

The evidence shows that under the Justin Haynes appraisal, which was accepted by the county board and the county assessor, the value was fixed at $101,449, this amount being *$40,867.91* less than the appellant's *actual cost*. The appellant's expert witness, one Floyd Housel, compared the sale value and the value for tax purposes and the value of some surrounding properties. The effect of his testimony was to establish that the tax value was higher than sale value. This is not controlling under the statute. There is no testimony on behalf of the appellant in which an effort is made to compare and relate the subject property of the new Centennial Building with other properties of known or recognized value. The president of appellant himself in his testimony mentioned five other commercial properties in the vicinity but made no effort to compare them in value to the new Centennial Building or the other buildings involved in the Justin Haynes appraisal. In the record in this case the only testimony in which such a comparison is made is by the appellee. The appellee's expert witness, Mr. Hilyard, established without dispute the comparative superior quality of the appellant's property, as we have mentioned heretofore.

The most elusive of all the criteria, the fair market value, is difficult to establish in this case because of the lack of any comparative sales in the vicinity or in the

City of Lexington. The president of appellant testified that the property was worth $85,000. Significant here is the testimony of the appellant's expert witness Mr. Housel. In his testimony he first appraised the property at $90,000, $5,000 more than the president of appellant, and in direct and cross-examination in breaking down the separate values of the land, the new building, and the older portion of the Centennial Building for the court, his values totaled $112,300. In other words it is apparent from the record that the testimony of appellant's expert witness is contradictory and self-conflicting.

As in all cases relating to valuation of property for tax purposes, there is a wealth of dispute and conflict as to the different details of valuation. The main thrust of the appellant's contention in this case is that the return on the investment does not warrant the county assessor's valuation and, therefore, is excessive. He relies primarily on the "earning capacity" factor in the statutory formula. Our court has rejected this single-minded approach to the valuation of property under section 77-112, R. S. Supp., 1969. In Josten-Wilbert Vault Co. v. Board of Equalization, 179 Neb. 415, 138 N. W. 2d 641, we held that no single factor or element of value standing alone is conclusive. A sale price, or an earning capacity of property, may be, in some circumstances, a very important factor in determining actual value or fair market value, but it is only evidence to be considered along with all of the other evidence. Significant here, however, is the fact that the appellant constructed a building, the actual cost of which was $142,316.91. It is extremely difficult to follow the appellant's contention in the light of the fact that its president himself felt the earning capacity of the building warranted the primary construction cost in excess of $142,000.

From what we have said, it is apparent the appellant's evidence in this case has fallen far short of the burden imposed upon a complaining taxpayer to establish by clear and convincing evidence that the valuation placed

upon the property is grossly excessive and the result of a systematic exercise of intentional will or failure of plain legal duty. LeDioyt v. County of Keith, *supra;* Newman v. County of Dawson, *supra.* The net effect of the appellant's evidence is the mere showing of the difference of opinion, and a comparatively small one, as to valuation. We can find nothing about the professional appraisal that is unreasonable, arbitrary, or capricious, nor can we find any error in the assessor accepting the result of this mandatory appraisal and fixing the valuation of this property.

The second contention of the appellant, which overlaps the first, is that the valuation of January 1, 1968, for tax purposes was disproportionately higher than property of equal value. As we have mentioned, this property was valued by a professional appraiser, Justin Haynes Company, in a county-wide reappraisal. It is apparent that this statutory and mandatory requirement for a county-wide appraisal was designed to secure a uniformity of fixing valuations and the assessment of property within the taxing jurisdiction of Dawson County. There is no evidence in this record, short of mere conclusion or expression of opinion by the president of appellant and its expert witness, Mr. Housel, that this property was assessed at a value too high in proportion to the values placed on other business properties in the City of Lexington. Here applicable is what this court said in Newman v. County of Dawson, *supra,* as follows: "The witnesses for the taxpayer do not fix the values of the properties with which his property is compared. The evidence is nothing more than the expression of opinions that plaintiff's property is disproportionately assessed to his injury."

In the record presented here the appellant has failed to lay any type of sufficient foundation for a mere conclusion that there was a disproportionate or nonuniform assessment of its property.

Summarizing, in determining the actual value for tax

purposes the district court carefully analyzed the evidence and considered every aspect of the formula. There is no dispute about the valuation of the remainder of the property. The valuation of the appellant was accepted by the court.

The district court was correct in reaching the actual valuation it did in the sum of $101,449 for the McDonald Building and $15,000 for the land on which it was situated. The judgment is correct and is affirmed.

AFFIRMED.

CARTER, J., not participating.