HASTINGS BUILDING CO., A CORPORATION, APPELLEE, V. BOARD OF EQUALIZATION OF ADAMS COUNTY ET AL., APPELLEES, CONSOLIDATED WITH JOHN N. MARVEL, IN PERSON AND FOR ALL PERSONS SIMILARLY SITUATED, APPELLANT, V. BOARD OF EQUALIZATION OF ADAMS COUNTY ET AL., APPELLEES.

206 N. W. 2d 338.

Filed April 6, 1973. No. 38611.

John N. Marvel, pro se.

James D. Conway and Duane L. Stromer, for appellee Hastings Building Co.

William M. Connolly, for appellees Board of Equalization et al.

Heard before WHITE, C. J., SPENCER, BOSLAUGH, SMITH, McCOWN, NEWTON, and CLINTON, JJ.

SPENCER, J.

This appeal involves the valuation for tax purposes of Block 9, Imperial Village Addition to the City of Hastings, Adams County, Nebraska. It is a consolidation of two cases. One, wherein John N. Marvel, in person and for all persons similarly situated, is plaintiff, and the Board of Equalization of Adams County, Nebraska; Adams County, Nebraska; Hastings Mall, Inc.; and Hastings Building Company, are defendants. In the second case, Hastings Building Company is plaintiff, and the Board of Equalization of Adams County, Nebraska, and Adams County, are defendants.

In the first action Marvel contended that the valuation of said land was excessively low and was not fairly and impartially equalized in relation to and proportionately with other property in said county. In the second case the Hastings Building Company alleged that the property was valued excessively high and in excess of the true value of the property. The District Court found in favor of the plaintiff, Hastings Building Company, and reduced the valuation of the property. Marvel prosecutes this appeal. We reverse.

Block 9, Imperial Village Addition, is delineated as consisting of four areas: Parcel A, 14.02 acres; Parcel B, 20.67 acres; Parcel C, 0.92 acres; and Airport Clear Zone Easement, 6.9 acres. Although Parcel C and the Clear Zone are included in the final valuation, those valuations are not disputed. Situated upon Parcels A and B is the Imperial Mall shopping center, containing approximately 23 retail stores and a parking area accommodating 2,072 automobiles. It includes three stores with the largest retail floor space in the city of Hastings: Montgomery-Ward, Woolworth, and J. M. McDonald Company. As of the time of trial, there was also some space still available for rental.

The property is owned by the Hastings Building Company and leased to the Hastings Mall, Inc. The stipulated rental is $8,000, but the Hastings Mall, Inc., has leases with its tenants providing for an override based on a dollar value of sales. Hastings Building Company is to receive 15 percent of all overage rentals.

The land was valued for tax purposes by the Adams County assessor for the year 1971 at $596,502, or approximately 48 cents per square foot for the shopping center and parking site. The valuation found by the District Court was $172,000, or approximately 14 cents per square foot.

The county assessor testified that in connection with section 77-112, R. S. Supp., 1969, he did a comparison with other property of known or accepted value. Each of the properties he considered was generally a shopping center. The type of the business was comparable. The properties he used for comparison were Gibson's, Tempo, and Allen's, retail stores engaged in business comparable with Imperial Mall. Gibson's consists of a single building with different departments. It has an area of 128,967 square feet, valued for tax purposes at $.743 per square foot. Allen's, like Gibson's, is one large store with several departments. The store has 119,816 square feet, valued at $.849 per square foot. Tempo, along with the Jack and Jill store, comprises the Western Mall. Tempo's 317,634 square feet are valued at $.4644 each. The county assessor personally inspected all the properties in question.

The county assessor did not make an exact comparison between Imperial Mall and the downtown area of the city, which is primarily a retail shopping center. The downtown area was more congested and had the benefit of streets, alleys, and parking. Imperial Mall furnished free parking for its customers at its own expense. This, however, was a competitive factor, drawing business to the Mall from the downtown area.

The assessor made no comparison between the rentals

on buildings at the Mall and rentals received from properties in downtown Hastings. In considering value, he did take into account the relative location of Imperial Mall with the relative location of the other shopping centers, two of which are approximately one-half mile distant from Imperial Mall. He was of the opinion that Imperial Mall had a more desirable location than Gibson's, Tempo, or Allen's because of its two entrances, making ingress and egress easier.

The county assessor, in his comparison with other business centers, took the land area and the square feet and then arrived at a per square foot value of the land. On the basis of these figures he valued Imperial Mall at $596,502, or a square foot valuation of $.4773 for each of its 1,249,736 square feet. This was approximately 1 cent more than Western Mall, but was from 27 to 37 cents less than the other two shopping centers.

It was stipulated that the Imperial Mall consisted of some 23 retail businesses and, excluding Allen's, Gibson's, and Tempo, it houses the three stores with the largest retail floor space in the city of Hastings. Plaintiff Marvel testified its first floor retail space is equivalent in size to the retail space existing in the downtown area. He argues a similarity between the downtown area and the shopping center is evident. Both provide a location for retail businesses and parking. There are differences. The shopping center is a completely enclosed one-floor shopping city, whereas the downtown area is broken by streets and alleys, inhibiting customer traffic. Parking at the shopping center is concentrated in a huge parking lot rather than on streets and small lots in the downtown area, and the facilities at the shopping center are valued by its tenants considerably higher than the same space in the downtown area.

Appellee attempted to discredit the assessor's valuation by emphasizing location differences between the Imperial Mall property and the shopping centers form-

ing the foundation for the assessor's comparison. Appellee particularly stressed the nearness of the comparable properties to a four-lane highway through Hastings, described as a main arterial highway, and stressed the fact that the principal route to the Imperial Mall is a two-lane street, although described as an arterial.

Appellee produced two experts to controvert the valuation set by the county assessor. They were Berkley W. Duck, an experienced Indiana real estate appraiser, and Fred A. Herrington, a former State Tax Commissioner. They premised their testimony on the assumption that there were no comparable properties in the Hastings area. Duck testified that the nearest comparable shopping center was one at Fremont, Nebraska, although there was a discount operation, Treasure City, at Grand Island. The Fremont center had a land area less than the land area involved in the Hastings center, and approximately 600 less parking spaces. He did not believe the finish was quite as good as the finish of the shopping center in Hastings, but thought the location was superior. The Fremont center was the only comparable center he viewed with reference to comparing it with the Hastings center, although he had knowledge of other shopping centers which to a greater or lesser degree entered into his judgment. These centers were in various other states and communities. Duck, using a market data approach and an income capitalization approach, fixed the valuation of the Imperial Mall at $172,000.

Herrington familiarized himself with the facts testified to by Duck regarding the Hastings and Fremont areas, and his opinion of the value of the Imperial Mall was $140,000.

Marvel, a Hastings real estate owner, testified to his association with the downtown business area and to his investigation and study of the valuation problem, all of which has been involved in an effort to maintain the downtown area as a viable retail area in the Hast-

ings locality. He produced exhibit 12 as additional examples of similar properties in the downtown area plus examples of vacant residential lots in the residential area in Hastings. The actual land valuations on said exhibit are as follows:

### RESIDENTIAL LAND

Block Six (6), except the north ten (10) feet of Alexanders Second Addition, $.22 per square foot.

### DOWNTOWN PARKING LOTS

Lots One (1), Two (2), and Three (3), Block Twenty (20), Johnson's Addition, $1.60 per square foot.

Lots Eighteen (18), Nineteen (19), and the West two-thirds (2/3) of Lot Twenty (20), Block Twenty-two (22), Original Town, $1.75 per square foot.

### FIRST STREET RETAIL (South Side)

Lot One (1), Block Twenty-seven (27), Original Town, $1 per square foot.

Lots One (1), and Two (2), Block Twenty-six (26), Original Town, $.72 per square foot.

### FIRST STREET RETAIL (North Side)

Lots Eleven (11), Twelve (12), and Thirteen (13), Block Twenty-four (24), Original Town, $1.12 per square foot.

### SECOND STREET RETAIL

Lot Two (2), Block Twenty-one (21), Original Town, $3.49 per square foot.

Lot Eight (8), Block Twenty-three (23), Original Town, $3.31 per square foot.

Lot Nine (9), Block Twenty-four (24), Original Town, $3.13 per square foot.

Lots One (1), Two (2), and Three (3), Block Twenty-one (21), Johnson's Addition, $1.60 per square foot.

Lots Three (3), Four (4), Five (5), and Six (6), Block Twenty-two (22), Original Town, $3.35 per square foot. This is a property in which Marvel has an interest.

### THIRD STREET RETAIL

Lots Fourteen (14), Fifteen (15), Sixteen (16), and Seventeen (17), Block Sixteen (16), Original Town, $1.83 per square foot.

Lot Fifteen (15), Block Sixteen (16), Original Town, $1.83 per square foot.

Appellant Marvel argues in effect that the Imperial Mall should be assessed on an equal basis with the downtown area. It was stipulated that the Imperial Mall and the downtown retail area are in the same taxing district. The appellee argues that the assessment by the Adams county assessor was in excess of the true market value of the property.

Section 77-112, R. S. Supp., 1969, states as follows: "Actual value of property for taxation shall mean and include the value of property for taxation that is ascertained by using the following formula where applicable: (1) Earning capacity of the property; (2) relative location; (3) desirability and functional use; (4) reproduction cost less depreciation; (5) comparison with other properties of known or recognized value; (6) market value in the ordinary course of trade; and (7) existing zoning of the property."

The scope of review from the county board of equalization is set out in section 77-1511, R. S. Supp., 1969. So far as it is material herein it provides: "The district court shall hear appeals and cross appeals taken under section 77-1510 as in equity and without a jury, and determine anew all questions raised before the county board of equalization which relate to the liability of the property to assessment, or the amount thereof. The court shall affirm the action taken by the board unless evidence is adduced establishing that the action of the board was unreasonable or arbitrary, or unless evidence is adduced establishing that the property of the appellant is assessed too low."

The judicial definition of the scope of review is found in Weller v. Valley County (1942), 141 Neb. 69, 2 N. W. 2d 606: "* * * there is a presumption that a board of equalization has faithfully performed its official duties, and that in making an assessment it acted upon sufficient competent evidence to justify its action. * * *

The presumption obtains only while there is an absence of competent evidence to the contrary. It disappears when there is competent evidence on appeal to the contrary, and from that point on the reasonableness of the valuation fixed by the board of equalization becomes one of fact based upon evidence, unaided by presumption, with the burden of showing such value to be unreasonable resting upon the appellant on appeal from the action of the board."

The initial question before this court is whether there is anything indicating that the board's valuation is without a foundation in the evidence. If there is, this court faces the factual issue of whether the board's valuation is reasonable. We said in Grainger Brothers Co. v. Board of Equalization (1966), 180 Neb. 571, 144 N. W. 2d 161: "An appeal to the district court from action of the county board of equalization is heard as in equity, and upon appeal therefrom to this court it is tried de novo.

"The burden of proof is upon a taxpayer to establish his contention that the value of his property has not been fairly and proportionately equalized with all other property, resulting in a discriminatory, unjust, and unfair assessment."

In Newman v. County of Dawson (1959), 167 Neb. 666, 94 N. W. 2d 47, we said: "It has been frequently recognized by this court that absolute or perfect equality and uniformity in taxation cannot be attained. Something more than a difference of opinion must be shown. It must be demonstrated by evidence that the assessment is grossly excessive and is a result of arbitrary or unlawful action, and not a mere error of judgment. A claim of disproportionate assessment is not sustained when supported only by opinion evidence that the property is assessed at a higher proportion to its actual value than some other property. Such a contention must be sustained by evidence that the valuation is arbitrary or capricious, or so wholly out of line with actual values as to give rise to an inference that the assessor and

county board of equalization have not properly discharged their duties. Mere errors of judgment do not sustain a claim of discrimination. There must be something more, something which in effect amounts to an intentional violation of the essential principle of practical uniformity. The law imposes the duty of valuing and equalizing of property for taxation purposes upon the county assessor and the county board of equalization. In reviewing the actions of tribunals created by law for ascertaining the valuation and equalization of property for taxation purposes, courts will not usurp the functions of such tribunals. It is only where such assessed valuations are not in accordance with law, or it is made to appear that they were made arbitrarily or capriciously, that courts will interfere. The valuation of property is largely a matter of judgment, but mere differences of opinion, honestly entertained, though erroneous, will not warrant the interference of the courts. If uniformity of opinion were required, no assessment could ever be sustained."

In Lexington Building Co., Inc. v. Board of Equalization (1971), 186 Neb. 821, 187 N. W. 2d 94, we said: "In an appeal to the county board of equalization or to the district court, and from the district court to this court, the burden of persuasion imposed on the complaining taxpayer is not met by showing a mere difference of opinion unless it is established by clear and convincing evidence that the valuation placed upon his property when compared with valuations placed on other similar property is grossly excessive and is the result of a systematic exercise of intentional will or failure of plain duty, and not mere errors of judgment."

The record would indicate that the assessor attempted to follow section 77-112, R. S. Supp., 1969, but in determining the actual value of property a board of equalization is not restricted to the formulas set out in section 77-112, R. S. Supp., 1969. Many elements enter into a determination of actual value, only some of which are

set out in the statute. Richards v. Board of Equalization (1965), 178 Neb. 537, 134 N. W. 2d 56.

Since the appeal of an assessment to this court is triable de novo, this court can make an independent evaluation of the facts. There is a presumption that the assessment made by the board has a sufficient foundation in the evidence until this presumption is overcome by competent evidence to the contrary. If there is evidence indicating an erroneous assessment, the reasonableness of the board's valuation becomes an issue of fact with the plaintiff bearing the burden of proving that the board has acted arbitrarily.

It is apparent that the assessor who inspected the property was aware of its relative location; its desirability and functional use; the existing zoning of the property; and its comparison with other property of known or recognized value. Inasmuch as we are dealing with only the land value, reproduction cost less depreciation is not a factor.

Appellee's experts restricted themselves to only the market data approach and an income capitalization approach. Appellee's appraisers premise their testimony on the fact that there were no comparable properties in Adams County. Duck did refer to the Tempo shopping area, but made downward adjustments of the Imperial Mall in comparison to Tempo. Duck also made a downward adjustment of this property in comparison to a 15-acre tract housing Treasure City at Grand Island. He concluded that the value of the Imperial Mall land was approximately 60 percent of the value attributed to the Grand Island land.

In the light of the rules set out above, we meet the question as to whether either of the parties has proved that the assessor's valuation as affirmed by the board of equalization is a discriminatory, unjust, or unfair assessment. We find that neither Marvel nor Hastings Building Company has sustained the burden of proving the unreasonableness of the valuation. We therefore

reverse the judgment of the District Court and remand the cause with directions to dismiss the appeal from the board of equalization.

REVERSED AND REMANDED.

NEWTON, J., concurring.

I concur in the majority opinion. We have here a situation in which a firm interested in development of suburban property purchased a large tract, sold a portion of it to another related firm, and through that firm secured the construction of a shopping center. The development of the shopping center would necessarily facilitate development of the rest of the tract purchased. This renders suspect the principal matters urged by the owner as the owner could well afford to give unduly preferential terms to the concern constructing the shopping center. It could afford to rent to the shopping center concern on terms extraordinarily reasonable, and also to enter into an option to sell to such concern on a basis below actual value. The price fixed in the option is not conclusive. No one would pay more for the property than the option price, but if the option were sold with the land it might vastly increase actual value. Actual value is based on land free of encumbrances such as an option.

The owner's expert witnesses based their valuations largely on an income basis. In doing so they considered only the $8,000 annual rental. Ignored were two factors. First, as part of the rent lessee was required to pay taxes. Second, the possibility of rentals increasing by reason of the 15 percent of overage rentals received by the shopping center concern from its tenants.

The use to which land is or can be put has a definite effect upon its value. Usage as a shopping center vastly increases the value of land over what it was in a vacant or unimproved state.

I conclude that the evidence fails to sustain the judgment of the District Court.

McCown, J., dissenting.

The majority opinion treats the principal issue in this case as one involving issues of uniformity and proportionate equalization with other property. The actual issue is the much more restricted issue of whether or not the particular property involved here was valued and assessed for taxes at more than its actual value.

Article VIII, section 1, of the Constitution of Nebraska, provides that "taxes shall be levied *by valuation* uniformly and proportionately upon all tangible property * * *." Section 77-201, R. R. S. 1943, requires that all real property subject to taxation "shall be valued at its actual value * * * and shall be assessed at thirty-five percent of such actual value."

A valuation in excess of actual value is clearly in violation of constitutional and statutory provisions. Such an overassessment has always been held to be an erroneous and illegal assessment but not void or unconstitutional except in the case of unlawful discrimination or other fraudulent conduct of the assessing officers. See Scudder v. County of Buffalo, 170 Neb. 293, 102 N. W. 2d 447. Such cases have held only that the exclusive remedy for overvaluation is by direct appeal to the courts, and that an erroneous overvaluation is not subject to collateral attack. See, Scudder v. County of Buffalo, *supra;* S. S. Kresge Co. v. Jensen, 164 Neb. 833, 83 N. W. 2d 569. The case here, however, is not a collateral attack but instead is a direct appeal to the courts, which was sustained by the District Court.

Two qualified expert witnesses for the taxpayer testified that the actual value of the real estate involved here was far less than the valuation fixed by the assessor and the county board of equalization. The county board called no expert witnesses but relied on the testimony of the assessor who, in turn, relied largely on the assessed valuation of other properties without evidence that such values represented "actual value" required by the Constitution and the statutes. The only

issue tried was the "actual value" of the taxpayer's property, an issue which generally demands opinion testimony by qualified expert witnesses. The District Court, who saw and heard the witnesses and who is presumptively far more familiar with local property values in Hastings than is this court, found the "actual value" of the property to be that testified to by the taxpayer's expert witnesses rather than the value placed on it by the county assessor. The assessor's valuation was roughly three times the valuation of the expert witnesses, a variation which can hardly be called "a mere difference of opinion."

Neither the county nor its taxing officials have appealed the judgment of the District Court. An interested taxpayer has appealed on the ground that the downtown business property in Hastings is assessed at a much higher rate per square foot. The contention is that all land used for commercial and business purposes should be assessed and taxed at uniform unit prices per square foot or other measurement unit. Such a classification would obviously be uniform. It would just as obviously not meet the constitutional requirement that taxes shall be levied "by valuation." Neither does such a method constitute an appropriate standard "for the determination of the value" of real estate as authorized by Article VIII, section 1, of the Constitution of Nebraska.

On the record here, and on the basis of such contentions, the majority opinion reverses the factual determination of the District Court, apparently upon the basis that the appeal is triable de novo here and this court can therefore make a completely independent evaluation of the facts. In effect it concludes that the testimony of two qualified expert witnesses was not acceptable or sufficient to support the judgment of the District Court and the judgment was therefore arbitrary

and erroneous. I cannot agree. The judgment of the District Court should be affirmed.

CLINTON, J., joins in this dissent.