NASH FINCH COMPANY, A CORPORATION, APPELLANT, V.
COUNTY BOARD OF EQUALIZATION, HALL COUNTY,
NEBRASKA, APPELLEE.

217 N. W. 2d 170

Filed April 18, 1974. No. 39157.

Luebs, Tracy, Huebner, Dowding & Beltzer and D. Steven Leininger, for appellant.

Sam Grimminger, for appellee.

Heard before WHITE, C. J., SPENCER, BOSLAUGH, McCOWN, NEWTON, and CLINTON, JJ., and ZEILINGER, District Judge.

WHITE, C. J.

This is an appeal from the decision of a District Court upholding the assessed valuation assigned to certain real estate by the County Board of Equalization of Hall County. The real estate involved, consisting of the south half of Block 16, Kernohan and Decker's Addition to the City of Grand Island, Nebraska, was zoned as residential property. Between 1966 and 1971 the appellant, Nash Finch Company, which leased the north half of the same block and operated a Jack and Jill store on that site, purchased the land in question and proceeded to remove the houses located upon it. On May 1, 1971, the property was rezoned by the city. Basically, the zoning remained residential in character, but under the new classification a conditional use permit could legally be issued to allow parking on the premises. Such a conditional use permit was in fact approved on June 1, 1971, thus, making it possible for Nash Finch to construct facilities to provide parking for patrons of its store. At approximately the same time, the alley in Block 16 was vacated by the city. As a result of these changes in the circumstance and use of the property, a reappraisal of the south half of Block 16 was ordered by the county assessor. Subsequently, Nash Finch received notice that the assessed value of the real estate in question had been increased to $18,294, the actual value having been determined to be $52,270. This increase in valuation was sustained by both the board of equalization and the District Court on successive appeals. Nash Finch appeals, assigning as error essentially that its property has been excessively valued and has not been fairly and proportionately equalized with all other similar property. We affirm the decision and judgment of the District Court.

An exhaustive discussion of the scope of judicial review in this court, the District Court, and before the board of equalization is found in our recent case of

Hastings Building Co. v. Board of Equalization, 190 Neb. 63, 206 N. W. 2d 338. We shall briefly review only those standards significantly pertinent to the determination of the issue of unjust discrimination presented by the appeal in this case. The burden of proof is upon a taxpayer to establish his contention that the value of his property has not been fairly and proportionately equalized with all other property, resulting in a discriminatory, unjust, and unfair assessment. Grainger Brothers Co. v. Board of Equalization, 180 Neb. 571, 144 N. W. 2d 161.

In meeting this burden of proof, we have recently affirmed in Hastings Building Co. v. Board of Equalization, *supra,* our basic holding in Newman v. County of Dawson, 167 Neb. 666, 94 N. W. 2d 47, wherein we said: "It has been frequently recognized by this court that absolute or perfect equality and uniformity in taxation cannot be attained. Something more than a difference of opinion must be shown. It must be demonstrated by evidence that the assessment *is grossly excessive and is a result of arbitrary or unlawful action, and not a mere error of judgment. A claim of disproportionate assessment is not sustained when supported only by opinion evidence that the property is assessed at a higher proportion to its actual value than some other property.* Such a contention must be sustained by evidence that the valuation *is arbitrary or capricious,* or so wholly out of line with actual values as to give rise to an inference that the assessor and county board of equalization have not properly discharged their duties. Mere errors of judgment do not sustain a claim of discrimination. There must be something more, something which in effect *amounts to an intentional violation of the essential principle of practical uniformity.* The law imposes the duty of valuing and equalizing of property for taxation purposes upon the county assessor and the county board of equalization. *In reviewing the actions of tribunals cre-*

*ated by law for ascertaining the valuation and equalization of property for taxation purposes, courts will not usurp the functions of such tribunals.* It is only where such assessed valuations are not in accordance with law, or it is made to appear that they were made arbitrarily or capriciously, that courts will interfere. The valuation of property is largely a matter of judgment, but mere differences of opinion, honestly entertained, though erroneous, will not warrant the interference of the courts. If uniformity of opinion were required, no assessment could ever be sustained." (Emphasis supplied.)

In Lexington Building Co., Inc. v. Board of Equalization, 186 Neb. 821, 187 N. W. 2d 94, we said as follows: "In an appeal to the county board of equalization or to the district court, and from the district court to this court, the burden of persuasion imposed on the complaining taxpayer is not met by showing a mere difference of opinion unless it is established by *clear and convincing evidence* that the valuation placed upon his property when compared with valuations placed on other similar property is grossly excessive and is the result of a systematic exercise of intentional will or failure of plain duty, and not mere errors of judgment." (Emphasis supplied.)

Underlying the above principles in guiding us in the judicial review of tax valuations are the standards set by the statute for the determination of actual valuation. The criteria by which the competence of evidence of value is tested may include, but are not limited to, those set out in section 77-112, R. R. S. 1943, which provides: "Actual value of property for taxation shall mean and include the value of property for taxation that is ascertained by using the following formula where applicable: (1) Earning capacity of the property; (2) relative location; (3) desirability and functional use; (4) reproduction cost less regular annual depreciation; (5) compari-

son with other properties of known or recognized value; (6) market value in the ordinary course of trade; and (7) existing zoning of the property." See, also, Richards v. Board of Equalization, 178 Neb. 537, 134 N. W. 2d 56.

Bearing these principles firmly in mind, we review the evidence to determine if there was error in the proceedings of the board of equalization and in the District Court which resulted in a discriminatory assessment against the appellant Nash Finch Company.

In the District Court, testimony was received from Charles Tillman, the county assessor of Hall County, and from Dennis Ingwerson, who assisted Tillman in reappraising the south half of Block 16. Taken together, their testimony indicates that many factors were considered in reappraising the Nash Finch property. Those factors included the desirability and functional use of, location of, and extant zoning of the real estate in question. It is true, of course, that as of January 1, 1972, the conditions of the use permit had not yet been carried out in order to allow parking on the premises. See § 77-1301, R. R. S. 1943. That fact is not, however, fatal to the case of the board of equalization. We believe that in this case the mere rezoning and issuance of the conditional use permit were sufficient to justify the reappraisal of the property and, when coupled with other factors, could serve to form a reasonable basis for the higher valuation.

The testimony of both Tillman and Ingwerson indicated that special significance was placed upon a comparison of the property in question with property in three adjoining blocks also being used for businesses and for parking in connection therewith. This comparison included a consideration of the purchase price of each of the properties and of the market value of each in the ordinary course of trade.

Safeway paid $225,000 ($3.48 per square foot) for its property when it was purchased in December of 1970.

As a result of reappraisal, the Safeway property was given a unit value of from $1.50 to $2 per square foot. The Safeway property was ultimately given an actual value of $102,300 and an assessed value of $35,806.

First Federal paid $264,000 ($3.57 per square foot) for its property when it was acquired in January of 1971. As a result of reappraisal, the First Federal property was given a unit value of from $1.50 to $2 per square foot. The First Federal property was ultimately given an actual value of $120,650 and an assessed value of $42,228.

Hinky Dinky paid $134,500 for its property when it was purchased in August of 1960. As a result of reappraisal, the Hinky Dinky property was given a unit value of from $1.50 to $2.25 per square foot. As of January 1, 1972, the Hinky Dinky property was given an actual value of $86,125, but that figure was later corrected to $121,770. The previous assessed value of $30,144 was corrected to $42,620.

Tillman testified that in valuing the properties considered he took account of the fact that they all had the same general location and that it was "the best location in the City of Grand Island." He also considered what was paid for the properties. Nash Finch paid a total of $77,750 ($2.23 per square foot) for the south half of Block 16. Tillman testified that in his opinion the property belonging to the Nash Finch had been equalized with similar property in the neighborhood. In his opinion, the south half of Block 16 has an actual value of $52,270 and an assessed value of $18,295. The property had thus been given a unit value of $1.50 per square foot.

For convenience purposes, the following chart shows a breakdown of dollar value per square foot assigned to the properties adjoining Nash Finch which were compared to its property.

SOUTH HALF OF BLOCK 16
34,848 square feet at $1.50 _____$ 52,272
SAFEWAY
52,272 square feet at $1.50 _____$ 78,408
8,712 square feet at $2.00 _____ 17,424
3,696 square feet at $1.75 _____ 6,468

$102,300
FIRST FEDERAL
52,272 square feet at $1.50 _____$ 78,408
17,424 square feet at $2.00 _____ 34,848
4,224 square feet at $1.75 _____ 7,392

$120,648
HINKY DINKY
56,496 square feet at $1.50 _____$ 84,744
8,712 square feet at $2.25 _____ 19,602
8,712 square feet at $2.00 _____ 17,424

$121,770

In attacking this comparison, Nash Finch points out the disparity in the purchase price of the properties and further emphasizes the fact that most of the property to which the Nash Finch land was compared is zoned commercial, as opposed to the residential zoning of the south half of Block 16. After thorough consideration, we remain unconvinced by the argument. The south half of Block 16 having perhaps a special value *only* to those controlling the north half of the same block, it is entirely possible that Nash Finch experienced a bargain when purchasing the property. Once, however, the south half of the block became related to the north half as an economic unit, the value of the south half would arguably be greater than it would have been had it retained its purely residential character. Ingwerson in particular seemed to emphasize the notion that, regardless of its zoning, the south half of Block 16 had

to be considered in conjunction with the north half of the block, and the business located thereon, for a realistic appraisal. We are not willing to say that, in the valuation of this land, such a consideration was unreasonable or improper. See Loskill v. Board of Equalization, 186 Neb. 707, 185 N. W. 2d 852.

We are compelled to conclude that the evidence before the District Court and the board of equalization established that, in appraising the actual value of the Nash Finch property, ample, competent evidence under the applicable standards was introduced and was considered by the two tribunals. The evidence herein shows at most a difference of opinion as to valuation and a difference of opinion as to the weight of the various factors that are applicable under the statute. It has not been established by clear and convincing evidence that the valuation placed upon the Nash Finch property, when compared with valuations placed on the other similar property in the immediate vicinity, is grossly excessive and is the result of a systematic exercise of intentional will or failure of plain duty. In the resolution of conflicting opinions as to valuation, we are not convinced that the board of equalization and the District Court were in error in their judgment as to valuation, much less that there was an intentional violation of the essential principle of practical uniformity.

The judgment of the District Court is correct and is affirmed.

AFFIRMED.

McCOWN, J., concurring in result.

In this case there was no claim that the property of the taxpayer was valued or assessed for tax purposes in an amount greater than its actual value. In fact, the evidence established beyond question that it was appraised and assessed at substantially less than the amount paid for the land by the taxpayer. The only

basis for the taxpayer's claim for relief was the asserted opinion that three properties of similar nature had been assessed at a smaller percentage of their actual value than the percentage of actual value at which the taxpayer's property was appraised and assessed. Where there is no evidence that the tax value used is in excess of actual value, evidence that one or a few other properties are valued proportionately less has never been sufficient to establish improper valuation. Only clear proof of arbitrary and intentional discrimination between the taxpayer's property and all other property was traditionally sufficient. See Sioux City Bridge Co. v. Dakota County, 260 U. S. 441, 43 S. Ct. 190, 67 L. Ed. 340, 28 A. L. R. 979.

We have consistently said: "A claim of disproportionate assessment is not sustained when supported only by opinion evidence that the property is assessed at a higher proportion to its actual value than some other property." Newman v. County of Dawson, 167 Neb. 666, 94 N. W. 2d 47. See, also, Hastings Building Co. v. Board of Equalization, 190 Neb. 63, 206 N. W. 2d 338. The evidence here established that the same method and system of valuation was applied to all the properties. Under those circumstances a few isolated instances of under-valuation of other properties are wholly insufficient to establish an arbitrary or discriminatory assessment of taxpayer's property where there is no claim that the tax value exceeds actual value. See, H/K Company v. Board of Equalization, 175 Neb. 268, 121 N. W. 2d 382; Lexington Building Co., Inc. v. Board of Equalization, 186 Neb. 821, 187 N. W. 2d 94.

The decision of the District Court was properly affirmed. Much of the discussion, particularly as to comparisons of valuations between different properties, is inappropriate in the context of this case.

CLINTON, J., joins in this concurrence.