THE COUNTY OF DU PAGE et al., Petitioners-Appellants, v. THE PROPERTY TAX APPEAL BOARD et al., Respondents-Appellees.—THE COUNTY OF DU PAGE et al., Petitioners-Appellants, v. THE PROPERTY TAX APPEAL BOARD et al., Respondents-Appellees.

Second District   Nos. 2—94—1444, 2—95—0094 cons.

Opinion filed December 8, 1995.—Rehearing denied February 22, 1996.

Anthony M. Peccarelli, State's Attorney, of Wheaton (Robert G. Rybica and Margaret M. Healy, Assistant State's Attorneys, of counsel), for petitioners.

James E. Ryan, Attorney General, and Theodore M. Swain, of Gould & Ratner, both of Chicago (Steven M. Waggoner, Special Assistant Attorney General, of counsel), for respondent Illinois Property Tax Appeal Board.

Thomas E. Brannigan, of Flanagan, Bilton & Brannigan, of Chicago, for respondent Saks Fifth Avenue, Inc., and Theodore M. Swain, of Gould & Ratner, of Chicago, for respondent Neiman Marcus Group.

JUSTICE DOYLE delivered the opinion of the court:

In these consolidated appeals, petitioners, Du Page County and the Du Page County Board of Review (the county), seek direct review of orders of the Property Tax Appeal Board (the Board) which reduced the assessments of property owned by respondents, Saks Fifth Avenue (Saks) and Neiman Marcus. The critical issue in each case is the same: whether the Board erred as a matter of law by allocating the value of the right to use parking and other common areas to parcels other than the subject parcels.

Respondents Saks and Neiman Marcus own and operate department stores at the Oak Brook Mall. The stores are freestanding structures, not connected to any other mall buildings, and occupy parcels with PINs ending in -031 and -041. The parties agree that these PINs are "pad parcels," consisting essentially of the buildings' footprints. The Saks store contains an 88,993-square-foot building on a pad site of 30,972 square feet. The Neiman Marcus store contains 112,099 square feet on a 49,658-foot pad site.

Pursuant to agreements with JMB Corporation, which owns most of the mall tracts, Saks and Neiman Marcus have the right to use certain common areas of the mall, including parking lots and pedestrian walkways. These areas are located on separate parcels which are assessed and taxed separately. The parties agree that these areas are necessary for the functional utility of the stores and also to meet applicable zoning requirements.

Technically, Saks leases its space from JMB. The lease gives Saks the right to use the common areas. Neiman Marcus purchased its site from JMB in 1982 for $7,150,000. The transfer declaration describes the property conveyed in fee simple as Parcel I, and also includes Parcel II, described as "[t]he rights and easements appurtenant to and benefiting Parcel No. I over and across" certain defined parcels.

For the year 1991, the York Township assessor valued Saks at $4,736,904 and Neiman Marcus at $6,505,221. Both respondents filed appeals with the Board, alleging overvaluation of the parcels by the Du Page County Board of Review.

At a hearing before the board, each side presented the testimony of an appraiser. Michael MaRous and Bill Hall testified for the Board of Review, and Michael Kelly testified on behalf of both respondents.

Each appraiser valued the parcels according to each of the three accepted appraisal methods: the reproduction cost method, the income capitalization method, and the comparable sales method. Each appraiser valued the Neiman Marcus tract at approximately $6 million and the Saks tract at approximately $4,500,000. However, Kelly made further adjustments to the values of the parcels.

Kelly determined that the Oak Brook Mall had a total land-to-building ratio of 3.26 to 1. Curiously, he then apparently multiplied the square footage of all floors of the Saks' building, 88,993, by 3.26. Kelly concluded, therefore, that, if the Saks parcel were assigned its *pro rata* share of the common-area facilities, it would have a total area of 290,117 square feet.

Kelly concluded that the fair market value of the subject property containing 290,117 square feet was $4,850,000. He then reduced this amount as follows:

| | |
|---|---|
| Total <u>land</u> area (assuming land-to-building-ratio of 3.26 to 1) | 290,117 square feet |
| Actual area of subject parcel | 30,972 square feet |
| <u>Land</u> area not included in parcel | 259,145 square feet |
| 259,145 square feet x $8.25 per square foot | $2,137,946 |
| $4,850,000 − $2,137,946 = $2,712,054. | |

Rounding the final figure produced a value of $2,710,000 for the 30,972-square-foot parcel.

Kelly used the same analysis in valuing the Neiman Marcus store. He estimated a total value of $6,150,000 for the parcel, then adjusted downward to a final figure of $3,230,000. At the hearing, he testified that the appraisal report contained an error and that the value should be $3,625,000.

Kelly testified that these adjustments were necessary because part of the value of the parcels was attributable to the common areas owned by the mall and assessed separately. On cross-examination, he testified that if the Saks parcel were to be sold, the sale price would be approximately $4,550,000. If the Neiman Marcus parcel were to be sold, the sale price would be approximately $6,150,000.

In the Saks appeal, MaRous testified on behalf of the county that the parcel had a market value of $5 million. In the Neiman Marcus appeal, Hall testified that the property's market value was $6,600,000.

In its findings, the Board stated that it gave little weight to the county's appraisals because they improperly allocated value from the common-area parcels to the subject parcels, in violation of the statutory requirement that for tax purposes one can value only the land and improvements contained on a unique tract identified by a parcel number. The Board concluded that the Saks parcel had an assessed valuation of $900,533, reflecting approximately $33^1/3 \%$ of $2,700,000. The Board concluded that the Neiman Marcus parcel had an assessed valuation of $1,204,590, reflecting approximately $33^1/3\%$ of $3,600,000. In essence, the Board adopted Kelly's valuations.

The county appealed both determinations (see 35 ILCS 205/111.4 (West 1992)), and this court consolidated the appeals. In each case, the county contends that the Board erred by subtracting the value attributable to the parking lot and common area easements from the assessed valuation of the department stores. The county contends that the value of these rights is inherent in the value of the subject parcels and should be included in their valuations. Alternatively, the county maintains that the right to use the common areas may be considered an easement appurtenant to the subject tracts and that its value should be included in the valuation of the dominant tenement. Finally, the county contends that the Board erred as a matter of law by concluding that the assessment at issue constituted double taxation.

Our review of this case is governed by the Administrative Review Law (735 ILCS Ann. 5/3—101 *et seq.* (Smith-Hurd Supp. 1995)). As in other administrative review actions, the agency's findings and conclusions on questions of fact are deemed *prima facie* true and correct. (*Kankakee County Board of Review v. Property Tax Appeal Board* (1989), 131 Ill. 2d 1, 14.) This court will not disturb the agency's findings where there exists simply a difference of opinion regarding the actual value of the property. (*Kankakee County*, 131 Ill. 2d at 14.) However, where an improper method of valuation is used, reviewing courts will actively intervene. *Kankakee County*, 131 Ill. 2d at 14; *Chrysler Corp. v. Illinois Property Tax Appeal Board* (1979), 69 Ill. App. 3d 207, 211.

■ The Property Tax Code (the Act) provides that each tract shall be assessed at 33¹/₃% of its fair cash value. (35 ILCS 200/9—145 (West 1994).) Fair cash value, or fair market value, is defined as the price at which ready, willing, and able buyers and sellers would agree. *Kankakee County*, 131 Ill. 2d at 16; *Springfield Marine Bank v. Property Tax Appeal Board* (1970), 44 Ill. 2d 428, 431.

■ In the present cases, Kelly admitted that the price at which ready, willing, and able buyers and sellers would agree was $4,500,000 for Saks and $6,150,000 for Neiman Marcus. However, Kelly proceeded to reduce his valuation of each tract based on an artificial distinction between value attributable to the parcel itself and value attributable to the nearby common-area parcels. Whether Kelly's calculations, as described above, are correct or erroneous has no practical bearing on our decision as we reject his basic methodology.

As a matter of common sense, every piece of improved real estate, whether used for residential or commercial purposes, derives some portion of its value from the fact that it is accessible by streets and sidewalks. It matters little whether the means of access are publicly or privately owned. Yet no one would seriously contend that each landowner is entitled to reduce his tax assessment proportionately by the value attributable to the streets and sidewalks.

Even if it were permissible to make such a division, it would be, in practical terms, impossible to do so. Kelly testified that, without the right to use the parking and other common facilities, the stores would have no value. Thus, if we were truly to consider the value of the stores divorced from the common areas, their value would be zero. Such a result is, of course, untenable.

The county's valuation, rather than "transferring" value from the common-area parcels to the store parcels, merely reflects that the relationship between the two is symbiotic: each has value because of its proximity to the others. To the contrary, the Board's decision artificially decreases the valuation of the store properties based on an arbitrary "ratio" of building space to land area in the mall as a whole.

The parties have not cited any case addressing this precise issue, and our research has not uncovered any. However, the Florida Supreme Court recognized the relationship between the various parcels located within a shopping center in a slightly different context. In *Homer v. Dadeland Shopping Center, Inc.* (Fla. 1969), 229 So. 2d 834, the court considered the assessment of the parking facilities of a large mall. The court held that the assessor was justified in refusing to reduce the assessments of the parking parcels although

they were encumbered by lease provisions guaranteeing tenants access to parking facilities. The court noted that a tax assessment must include all interests in the property. *Homer*, 229 So. 2d at 837.

In language particularly relevant to the instant case, the court described the relationship between the stores and the common area facilities:

"The individual leases complement one another in order to foster the goal of multipurpose or 'one-stop' shopping. The shopping center was designed and operated as an economic whole and availability of adequate parking facilities for the customers is one of the big factors in attracting tenants. This is one of the rights the tenants receive for the rent which is paid." *Homer*, 229 So. 2d at 836.

See also *Southland Mall, Inc. v. Garner* (6th Cir. 1972), 455 F.2d 887, 891; *Nash Finch Co. v. County Board of Equalization* (1974), 191 Neb. 645, 217 N.W.2d 170.

Just as the parking parcels have value because they are located in proximity to the stores, so the stores have value because they have access to parking. Undoubtedly the right to use the surrounding parking facilities is a right attributable to the store parcels. Reducing the assessments in the manner done by the Board is to assess less than all the interests in those parcels. The Act defines real property as follows:

"The land itself, with all things contained therein, and also all buildings, structures and improvements, *** and all rights and privileges belonging or pertaining thereto ***." (35 ILCS 200/1— 130 (West 1994).)

The right to have customers park on and walk to the store across adjacent parcels is undoubtedly one of the "rights and privileges belonging or pertaining" to the store parcels.

Respondents rely extensively on *Lake County Board of Review v. Property Tax Appeal Board* (1980), 91 Ill. App. 3d 117. That case dealt with the assessment of a lake which was owned by an association for the benefit of the surrounding homeowners. The association argued that the lake had no practical value and should be assessed in a nominal amount. This court disagreed, stating that "there is no assessment principle in Illinois which provides that the assessed value of the scenic property may itself be correspondingly reduced because of its effect on surrounding property." *Lake County*, 91 Ill. App. 3d at 122.

Respondents attempt to analogize the lake to the common areas in this case. However, that the value of the common areas may not be reduced does not mean that the value of the surrounding parcels

may not properly reflect the increase in their value based on their proximity to the common areas. As we noted previously, each set of parcels is worth more by being located near the other.

Saks and Neiman Marcus contend, however, that if the county's view is adopted they will be subject to double taxation, since they also pay to JMB amounts representing their *pro rata* shares of the taxes on the common areas. What we have said regarding the relationship between the various parcels refutes this argument. That the value of the stores is enhanced by having access to the parking and other common areas does not mean that those parcels have no value. They have value to the mall by allowing it to attract tenants, and the owner of the mall is liable for the taxes thereon. The parties' private agreement that the tenants will be liable for their *pro rata* share of taxes on the common areas does not imply that the tenants are being taxed twice for the same property. Each parcel enhances the value of the other.

For the foregoing reasons, the orders of the Property Tax Appeal Board invalidating the assessments are reversed.

Reversed.

GEIGER and HUTCHINSON, JJ., concur.